Minute Order Form (06/97)

# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 C 50009 | DATE | 6/14/2004 |
| CASE TITLE | Bryan vs. Belvidere National Bank | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the reverse memorandum opinion and order, the court grants defendant's motion to dismiss Counts I and II of the amended complaint for lack of subject matter jurisdiction, declines to exercise supplemental jurisdiction over the state law claims in Counts III-VI, and dismisses this cause in its entirety.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | 6-15-04 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | 28 |
| ✓ | Mail AO 450 form. | | |
| ✓ | Copy to judge/magistrate judge. ✓ | 6-14-04 date mailed notice | |
| LC | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Juli and Danny Bryan, filed an amended complaint claiming violations of consumer protection laws by defendant, the Belvidere National Bank & Trust Company (hereinafter "BNB"). Plaintiffs seek to recover damages for BNB's alleged violations of two federal laws, the Fair Credit Reporting Act in Count I (hereinafter "FCRA") and the Equal Credit Opportunity Act in Count II (hereinafter "ECOA"), as well as for several claims arising under Illinois law (Counts III through VI). BNB moved to dismiss for lack of subject matter jurisdiction under Fed. Rule Civ. P. 12(b)(1), based on both the Rooker-Feldman doctrine and the common law doctrine of res judicata.

In reviewing a 12(b)(1) motion to dismiss, the court may look beyond the complaint to other evidence submitted by the parties to determine whether subject matter jurisdiction exists, United Transp. Union v. Gateway Western Ry. Co., 78 F.3d 1208, 1210 (7th Cir. 1996), and it must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff, Long v. Shorebank Dev. Corp., 182 F.3d 548 (7th Cir. 1999). The plaintiff facing a motion to dismiss bears the burden of establishing that jurisdictional requirements have been met. See Transit Exp., Inc. v. Ettinger, 246 F.3d 1018, 1023 (7th Cir. 2001).

Because a federal court may not resolve the merits of a case until it is certain that it has proper subject matter jurisdiction over the controversy, Christianson v. Colt Indus. Op. Corp., 486 U.S. 800, 818 (1988), the applicability of Rooker-Feldman must be decided before the court considers other affirmative defenses, such as including res judicata. Garry v. Geils, 82 F.3d 1362, 1365 (7th Cir. 1996). Moreover, applicability of Rooker-Feldman to this case is appropriate under the guideline announced by the United States Court of Appeals for the Seventh Circuit, which recognizes a distinction between a federal claim alleging injury caused by a state court judgment, implicating Rooker-Feldman, and a federal claim alleging a prior injury that a state court failed to remedy, which implicates res judicata. Garry, 82 F.3d at 1366. To distinguish between these two doctrines, the Seventh Circuit looks to the status of the federal plaintiff in the preceding state action. In general, though there are exceptions, where the federal plaintiff was the plaintiff in state court, res judicata is the appropriate doctrine to apply; the second complaint shows that the plaintiff wants to ignore rather than upset the state court judgment. But where the federal plaintiff was the defendant in state court, apply Rooker-Feldman; a defendant who has lost in state court does not assert injury at the hands of his adversary, but at the hands of the court in the form of a wrongful judgment, and he seeks collateral review of that judgment. Garry, 82 F.3d at 1367. In the present case, plaintiffs were the defendants in the state court proceeding.

Under Rooker-Feldman, "no court of the United States other than [the Supreme Court can] entertain a proceeding to reverse or modify the judgment for errors of [a state court]. To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original." Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923). See also 28 U.S.C. § 1257 (establishing Supreme Court jurisdiction to review "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had"). In its simplest form, Rooker-Feldman stands for the proposition that lower federal courts lack jurisdiction to engage in appellate review of state court determinations. Pennzoil v. Texaco Inc., 481 U.S. 1, 21 (1987). The doctrine bars "an action in federal court that alleges an injury 'inextricably intertwined' with a state court decision, such that success in the federal court would require overturning the state court decision," Epps v. Creditnet, Inc., 320 F.3d 756, 759 (7th Cir. 2003), even if the claim was not directly argued in the state court, Ritter v. Ross, 992 F.2d 750, 753 (7th Cir. 1993). Lower federal courts may adjudicate claims, however, that are "separable from and collateral to" the merits of the state court judgment. Ritter, 992 F.2d at 754.

In a Rooker-Feldman analysis, the fundamental question is whether the injury alleged by the federal plaintiff resulted from or is distinct from the state court judgment. Garry, 82 F.3d at 1365. The crucial point is whether the district court is in essence being called upon to review the state court decision. Ritter, 992 F.2d at 754. "[I]s the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party?" GASH Associates v. Village of Rosemont, 995 F.2d 726, 728 (7th Cir. 1993). If the injury which the federal plaintiff alleges resulted from the state court judgment itself, then Rooker-Feldman controls and the lower federal courts lack jurisdiction over the claim. Schmitt v. Schmitt, 324 F.3d 484, 486 (7th Cir. 2003). In determining if a claim is 'inextricably intertwined' with the state court judgment, the Seventh Circuit considers: (1) whether the plaintiff had a reasonable opportunity to raise the claims in state court; and (2) whether the state court judgment caused the injury of which the plaintiff complains. Thompson v. Ameriquest Mortgage Co., No. 03-C3256, 2003 WL 22012207, at *2, 2003 U.S. Dist. LEXIS 14700, at *4 (N. Dist. Ill. 2003). A federal claim is not considered 'inextricably intertwined' merely because it could have been raised, but was not, in the earlier state court proceeding. Ritter, 992 F.2d at 754.

In determining if Rooker-Feldman bars this court from entertaining plaintiffs' claims, the court must first resolve plaintiffs' contention that they did not have a reasonable opportunity in state court to raise their claimed injuries, which "resulted from [BNB's] conduct in denying plaintiffs' their statutory as well as contractual rights to reinstate their mortgage." This statement makes clear that plaintiffs' federal claims are based, at least in part, on conduct complete before the entry of the foreclosure judgment, including BNB's failure to respond to plaintiffs' repeated attempts to inquire about reinstatement and to accept tender of plaintiffs' money during the statutory reinstatement period, as well as BNB's failure to give plaintiffs written notice of the reason behind the "adverse action" taken against them and to advise plaintiffs of their rights under the ECOA (Count II). The reasonable opportunity exception to Rooker-Feldman requires that the plaintiff point to some action or procedure of the state court – independent of the actions of the opposing party – that prevent it from presenting its claims to the state court. Long v. Shorebank Dev. Corp., 182 F.3d 548, 558 (7th Cir. 1999). The exception does not apply in this case as nothing in Illinois law or state court procedures prevented plaintiff from raising its claims regarding BNB's pre-judgment misconduct, including the alleged Count II ECOA violation, in state court or from appealing the decision to a higher state court. See Nationscredit Home Equity Services Corporation v. City of Chicago, 135 F. Supp. 2d 905, 912 (N. Dist. Ill. 2001). Instead, unlike the eviction statute at issue in Long, which prevented the defendant in the state court proceeding from raising matters not germane to the issue of possession, the Illinois foreclosure law at issue in this case permits a defendant to present unlimited issues in her defense during a mortgage foreclosure action. Thus, Long's "reasonable opportunity" exception is not applicable, and the fact that plaintiffs may have waived the opportunity to challenge the state court judgment, leaving them with no forum in which to now assert their claims, does not affect the court's application of the Rooker-Feldman doctrine. Garry, 82 F.3d at 1369.

The next issue is determining whether plaintiffs' injuries were caused by or are independent of the Illinois court's foreclosure judgment. From a review of plaintiffs' amended complaint and response to BNB's motion to dismiss, the court concludes that plaintiffs' injuries were caused by, and thus are inextricably intertwined with, the state court judgment. In the amended complaint, plaintiffs allege that BNB obtained a foreclosure judgment against them in violation of the ECOA (Count II), and that as a result of this judgment, plaintiffs disputed the foreclosure on their credit report, leading to BNB's failure to reinvestigate and resulting in BNB's alleged FCRA violation (Count I). The complaint further alleges that by failing to allow plaintiffs to exercise their statutory and contractual rights to reinstate their mortgage, BNB took "adverse action" against plaintiffs, triggering the affirmative duties identified in the ECOA, and with which BNB's failure to comply resulted in the alleged Count II violation. This language clearly suggests that the claim advanced in Count II is inextricably intertwined with the matters decided by the state court. Furthermore, in their response to BNB's motion to dismiss, plaintiffs state that they advance claims "based on [BNB's] egregious refusal to work with them and allow plaintiffs to reinstate their mortgage," and that their "injuries resulted from [BNB's] conduct in denying plaintiffs their statutory as well as contractual rights to reinstate their mortgage," all conduct that occurred before the judgment of foreclosure was entered and all facts that could and should have been argued by the plaintiffs in their defense at the state court level. Thus, in their own words, plaintiffs admit that their federal claims are based upon the same set of facts that were actionable in the state court foreclosure proceeding, suggesting that both of their federal claims are indeed inextricably intertwined with the state court's decision, and that it is this adverse judgment that is the true object of the present action. Consider further that although BNB's alleged FCRA violation (Count I) did not arise until after the foreclosure judgment had been entered, plaintiffs' cause of action under the FCRA was triggered by BNB's failure to conduct a reinvestigation of the same facts that were at issue in the state court proceeding. Because plaintiffs had a reasonable opportunity to raise these issues in the prior proceeding, and because the reinvestigation mandated by the FCRA involved the same facts and issues that the state court was asked to rule upon in granting the judgment of foreclosure, the FCRA violation charged in Count I is clearly intertwined with the earlier state court decision.

Moreover, "plaintiffs cannot avoid Rooker-Feldman by framing their claims in terms of defendants' attempts to obtain exactly what the state court awarded to them." Bullock v. The Credit Bureau of Greater Indianapolis, Inc., 272 F. Supp. 2d 780, 783 (S. Dist. Ind. 2003). In their response to BNB's motion to dismiss, plaintiffs assert that their "federal claims arise from [BNB's] taking of the foreclosure judgment after denying plaintiffs their statutory and contractual rights to reinstate." In the prior state court proceeding, the Illinois court found that BNB was entitled to obtain a judgment of foreclosure against plaintiffs. BNB was well within its rights in acting upon that judgment. Plaintiffs cannot now claim that BNB's post-litigation conduct in accepting the judgment gives them a cause of action in federal court. To do so further suggests that plaintiffs' true motive is to overturn the Illinois court's foreclosure judgment, which is precisely the type of review that Rooker-Feldman is intended to prohibit.

Although the Rooker-Feldman doctrine effectively disposes of plaintiffs' two federal claims, the common law doctrine of res judicata is an alternative grounds for dismissal. Under res judicata, a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action. River Park, Inc. v. The City of Highland Park, 184 Ill. 2d 290, 302 (1998). Under 28 U.S.C. § 1738, a federal court must apply the res judicata law of Illinois in determining the preclusive effect of a judgment rendered by an Illinois court. Hagee v. Town of Evanston, 729 F.2d 510, 512 (7th Cir. 1984). Illinois law requires three elements for res judicata to apply: (1) identity of parties and their privies in the two suits, (2) identity of causes of action in the prior and current suit, and (3) a final judgment on the merits in the prior suit. Schlangen v. Resolution Trust Corporation, 934 F.2d 143, 145-146 (7th Cir. 1991). As plaintiffs concede that the first and third elements are met, we must only determine that the second element is satisfied in order to apply res judicata to this case.

In Illinois, the standard for determining identity of action is the transactional test, which states that separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief. River Park, 184 Ill. 2d at 311. As plaintiffs have stated that their "injuries resulted from [BNB's] conduct in denying plaintiffs their statutory as well as contractual rights to reinstate their mortgage," the facts behind their federal claims are clearly related in time, space, origin and motivation to those at issue in the state court foreclosure proceeding.

Plaintiffs have failed to meet their burden of establishing that this court has subject matter jurisdiction over their federal claims, and in accord with 28 U.S.C. § 1367(c)(3), this court declines to exercise supplemental jurisdiction over their state law claims.

For the foregoing reasons, BNB's motion to dismiss for lack of subject matter jurisdiction is hereby granted.